IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY ANTONIO JONES       :

                          :

    v.                      :    Civil Action No. DKC 17-0835
                                   Criminal No. DKC 14-0176

                          :

UNITED STATES OF AMERICA   :

                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the remaining issue presented by the motion to vacate sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner Gary Jones ("Petitioner"). (ECF No. 219). An evidentiary hearing has been held, and no further hearing is necessary. For the following reasons, the motion to vacate will be denied.

**I.    Background**

Petitioner was first tried on February 24, 2015, which resulted in a mistrial because the jury was unable to reach a unanimous verdict. He was retried beginning March 3, 2015. On April 3, 2015, Petitioner was convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (ECF No. 198). The Presentence Investigative Report and Recommendation found that under the United States Sentencing Guidelines ("USSG" or "Guidelines"), Petitioner had a criminal history of IV and a total offense score of 26. The offense score reflected a two-

level enhancement for obstruction of justice because Petitioner had committed perjury by providing testimony at trial in direct contradiction of statements Petitioner previously made to the police. The Guidelines range was 92 to 116 months imprisonment. (ECF No. 190). On July 7, 2015, Petitioner was sentenced to 96 months in prison. (ECF No. 198).

Petitioner appealed, arguing that the district court erred when it denied his motions to suppress evidence, considered certain information at his sentencing, and applied the two-level enhancement for obstruction of justice. The United States Court of Appeals for the Fourth Circuit affirmed on May 19, 2016. *United States v. Jones*, 648 F.App'x 383 (4th Cir. 2016).

In a series of filings, Petitioner moved to vacate his sentence pursuant to 28 U.S.C. § 2255 on numerous grounds. (ECF Nos. 219; 224; 231; 234). In an earlier Memorandum Opinion and Order (ECF Nos. 253; 254), the court denied the motion with respect to all of the contentions except the first: counsel was ineffective for advising "Petitioner not to accept the [6-year] guilty plea offered by the government." (ECF No. 234, at 4). Thereafter counsel was appointed, an evidentiary hearing was held, and the parties were provided an opportunity for additional briefing. For the following reasons, the motion will be denied with respect to the final issue, and a certificate of appealability will not issue.

**II. Standard for Motion to Vacate Pursuant to 28 U.S.C. § 2255**

To be eligible for relief under 28 U.S.C. § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

To prevail on a claim of ineffective assistance of counsel, a petitioner needs first to show that "counsel's efforts were objectively unreasonable when measured against prevailing professional norms." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005).  In evaluating objective unreasonableness, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In addition, a petitioner must show prejudice meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694.

Counsel can be ineffective in the plea negotiation process for failing to inform a defendant about the prosecution's offer of a guilty plea. *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept

a plea on terms and conditions that may be favorable to the accused."). Counsel can also be ineffective during plea negotiations if counsel provides erroneous advice about the relative advantages and disadvantages of a plea agreement as opposed to going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[T]he performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial.").

**III. Analysis**

The parties agree that Petitioner was offered two written plea agreements prior to the first trial, the first dated December 4, 2014, and the second dated February 20, 2015. The only difference between the two concerned reservation of the right to appeal the suppression ruling. Petitioner chose not to accept the offers. (ECF No. 138, at 17-18). Petitioner does not allege he did not receive the offers or that he received bad advice about them.

Petitioner went to trial on February 24, 2015, which resulted in a mistrial. (ECF No. 118). In his motion, Petitioner alleges that, after the mistrial, he "expressed interest in accepting a guilty plea" but that his trial attorney, Mr. Joseph Conte, "advised Petitioner against accepting the guilty plea" and "advised Petitioner that the available evidence . . . would procure an [acquittal]." (ECF No. 234-1, at 3).

At the evidentiary hearing, Petitioner testified that, after

the mistrial, "I told him I want to take a plea, the government

plea offer, the plea there." (ECF No. 283, at 8). According to

Petitioner, Mr. Conte advised him, maybe by letter and in person,

not to take the plea. Mr. Conte purportedly told him that, if the

next trial resulted in another mistrial, the government was not

likely to try him a third time.

Petitioner testified that he and Mr. Conte discussed getting

witnesses to court and potential problems with the Fifth Amendment.

(ECF No. 283, at 7-9). Petitioner acknowledged that Mr. Conte

said something about an "open plea" but he didn't know what that

term meant. (*Id.*, at 19).

Several attorney inquiry hearings were held before magistrate

judges during the course of Mr. Conte's representation. At one of

those hearings on February 18, 2015, Petitioner mentioned the plea

offer of "6 years and if I was to go to trial, it would be 7

years." (ECF No. 268 at 7).

Mr. Conte testified that he received two written plea offers

from the Government before the first trial about which he advised

Petitioner orally, and about one in writing. (Gov't Ex. 2). Mr.

Conte indicated that Petitioner had been adamant that he did not

want to hear about a plea, but counsel had a duty to convey the

offers. Because the court had conducted a suppression hearing,

and ruled against Petitioner, counsel advised against accepting

the first offer because it contained a complete appeal waiver and was no better than pleading to the indictment without an agreement ("an open plea").

Mr. Conte related that, after rejecting the first plea that was offered, Petitioner indicated he would accept a plea if the sentence was limited to two years. On cross examination, Mr. Conte consulted his notes and stated that the request from Petitioner came on January 15, 2015. (ECF No. 283, at 50). Mr. Conte approached the Government, which declined to enter into such an agreement. (ECF No. 283 at 32-33; Gov't Ex. 5).

The second written offer was a conditional plea and would have allowed Petitioner to appeal the suppression issue, but possibly not the speedy trial issue. (ECF No. 283, at 36-39; Gov't Ex. 1). In any event, it still was no better than pleading to the indictment.

The first trial took place from February 24 to February 26, 2015. At the outset of trial, the parties put on the record the fact that two written offers had been extended and rejected. The second trial began on March 31, 2015.

Mr. Conte stated that, after the mistrial, Petitioner still did not want to plead guilty. He denied telling Petitioner that his chances were better at a second trial, if anything they would have been worse. He denied telling him that he would get the same sentence whether he went to trial or pleaded guilty, instead

stating that he would advise him that acceptance of responsibility would lessen the potential sentence. Indeed, going to trial risked higher guidelines. He denied telling Petitioner that if two witnesses came to testify and the trial resulted in another mistrial, that the government was unlikely to try him again. He denied that Petitioner instructed him to solicit a plea offer from the government or that Petitioner was willing to plead open to the indictment.

The court finds that Petitioner did not tell Mr. Conte, after the mistrial and before the second trial, that he wanted to accept the plea offer previously extended by the government. Nor did he tell Mr. Conte that he wanted to plead to the indictment without a plea agreement. The only indication from Petitioner that he was willing to enter a guilty plea was prior to the first trial and if the sentence was limited to two years.

There was only one month between the two trials. The docket reflects that counsel on both sides were busy preparing for the retrial. In a request to revisit the detention order, Mr. Conte wrote on March 2, 2015, that "[i]t is unlikely that a new trial will produce any different result than the last trial." (ECF No. 123, at 3). This advocacy on behalf of Petitioner was an effort to minimize the strength of the Government's case, but is not an indication that he assured Petitioner of the outcome of the second trial. Motions in limine, updated voir dire, and jury instructions

7

were filed.  A motions hearing took place on March 26, 2015.

During the hearing, the court addressed Petitioner directly

concerning a letter that had just arrived to chambers but had

apparently been written some time before.  (ECF No. 154, at 27–

28).  The court returned the letter to Petitioner so that he could

address his questions to Mr. Conte.  (*Id.*).  There was no mention

of a request to solicit another plea offer or to plead to the

indictment.  Petitioner has conflated communications occurring

before the first trial with recollection about the time between

the two trials.  For instance, he testified that, when he asked

Mr. Conte to pursue a plea offer, Mr. Conte sent a letter to CTF

with advice not to take the plea. He indicated that, when Mr. Conte

next came to see him, Petitioner asked why he should not take the

plea, and Mr. Conte responded that the government would not retry

him a third time if the second trial resulted again in mistrial.

(ECF No. 283 at 8, 20, 22).  That letter, and that rejected plea

offer, took place before the first trial.  Any advice against

taking the plea was solely before the first trial.  Mr. Conte's

advice in advance of the first trial to reject the Government's

written plea offers was based explicitly on two factors: the

appellate waiver and the absence of any real benefit to Petitioner.

He could have pleaded to the indictment and avoided any appeal

waiver and the guidelines would have been the same as in the

written plea offer.  There was nothing wrong with that advice.

8

While Petitioner may wish he had thought more seriously about pleading guilty, his assertions that he sought to do so between the trials lack substance. Counsel simply would not have ignored any such requests and the court finds that none were made. It follows that Petitioner has not shown that counsel provided ineffective representation regarding plea negotiations and the final aspect of Petitioner's § 2255 motion will be denied.

## IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Upon review of the record, the court finds that Petitioner has not satisfied the above standard. Accordingly, a certificate of appealability will not issue.

## V.   Conclusion

For the foregoing reasons, the motion to vacate filed by Petitioner will be denied in its entirety and a certificate of appealability will not issue.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
